151 So. 641

**JONES et al. v. ABERCROMBIE et al.**

No. 27800.

Nov. 27, 1933.

S. L. Digby, of Monroe, J. W. Elder, of Ruston, and Dhu Thompson, of Monroe, for appellants.

A. K. Goff, Jr., of Ruston, for appellees.

ROGERS, Justice.

Mrs. Sarah L. Abercrombie, wife of J. H. Abercrombie, died intestate on March 26, 1920, leaving ten children, issue of the marriage. J. H. Abercrombie remarried in October, 1924, thereby forfeiting his usufruct of the community property. This suit was filed in February, 1925, and was brought by four children born of the marriage of J. H. Abercrombie and his deceased wife, Mrs. Sarah L. Abercrombie. J. H. Abercrombie and the other children born of the marriage are the defendants in the action.

Plaintiffs' suit is for a partition of the property owned in community by their parents, and includes a demand for an accounting on the part of the usufructuary since his

second marriage, and also seeks to bring back into the community estate for the purpose of the partition an undivided two-thirds interest in 260 acres of land conveyed to Eric Abercrombie and L. L. Abercrombie, plaintiffs' brothers, on the ground that the conveyance was without consideration and constituted a disguised donation.

Defendants J. H. Abercrombie, Eric Abercrombie, and L. L. Abercrombie denied that the conveyance attacked was a donation in disguise, and alleged that the conveyance was made in good faith for an adequate consideration. J. H. Abercrombie also denied that he had wrongfully disposed of any of the community property, or that he owed plaintiffs anything in the way of an accounting.

There was judgment in the court below recognizing as valid the sale to Eric Abercrombie and L. L. Abercrombie; rejecting plaintiffs' demand against J. H. Abererombie for an accounting for certain property sold by him after the death of his first wife; recognizing and putting in possession the children and heirs of the decedent, Mrs. Sarah L. Abercrombie, and ordering a partition by licitation of all the property jointly owned by them and their father, J. H. Abercrombie. From this judgment, plaintiffs have appealed.

Plaintiffs complain that the court below erred in three respects: First, in refusing to permit them to show the cash on hand belonging to the community at the time of the death of their mother; secondly, in refusing to require an accounting for certain cattle and timber disposed of and not accounted for by the defendant J. H. Abercrombie; thirdly, in refusing to annul the act of sale executed by J. H. Abercrombie to Eric Abercrombie and L. L. Abercrombie.

First. Plaintiffs did not allege that the community possessed any cash at the date of Mrs. Abercrombie's death, and that her husband, J. H. Abercrombie, had disposed of it. When plaintiffs attempted to offer testimony to that effect, defendants objected to the offer, on the ground that the allegations of plaintiffs' petition would not support such proof. The court sustained the objection. We find no error in the ruling. Evidence cannot be received to prove a demand that has not been urged in the petition.

Second. This complaint involves only a question of fact. The testimony failed to convince the trial judge that the defendant J. H. Abercrombie was guilty of any timber conversion, and our examination of the record does not justify us in taking issue with him in that respect. The timber was felled in the process of clearing the land for cultivation. Some of this timber was cut into stave-bolts that were used by J. H. Abercrombie for household purposes. While a few loads or cords of the surplus stave-bolts were sold to other householders, there is nothing in the record to show that any of the timber had been used for speculative or commercial purposes so as to produce a profit for J. H. Abercrombie.

Plaintiffs prayed for an accounting by defendant J. H. Abercrombie of the cattle and live stock on hand at the time of their mother's death. The evidence shows that the live stock consisted of two colts or young horses, the ownership of which was claimed by two of the younger sons of J. H. Abercrombie and

his deceased wife. And plaintiffs make no complaint of the trial judge's ruling rejecting their claim in that respect.

Plaintiffs adduced evidence tending to show that the number of cattle belonging to the community existing between their father and their deceased mother was "about forty odd head." The testimony adduced in behalf of J. H. Abercrombie showed that only twenty-one head of cattle—ten cows, six calves, and five yearlings—belonged to the matrimonial community. This was also the number and designation of the cattle for which defendant was assessed. Defendant's testimony on this point was accepted as correct by the trial judge, and we see no reason to depart from his ruling.

The trial judge found that J. H. Abercrombie had not sold any cattle belonging to his first matrimonial community, and that all the cattle, except those that had died or had been butchered for the use of the family, were on hand at the date this suit was filed. The increase from the cattle during the time defendant held them in usufruct belonged to him as usufructuary. Civ. Code, art. 544.

According to the inventory which was taken in this proceeding on plaintiffs' application, defendant accounted for twenty head of cattle—ten grown ones and ten yearlings—as the property of the matrimonial community resulting from his first marriage. The trial judge, making due allowance for the death of one of the animals without defendant's fault, held, and we think properly, that defendant had complied with the law in accounting for the cattle.

■ Third. On January 19, 1918, during the lifetime of his first wife, Mrs. Sarah L. Abercrombie, the defendant J. H. Abercrombie executed a notarial act, whereby for a recited consideration of $1,213 cash he sold to his two minor sons, Eric Abercrombie and L. L. Abercrombie, an undivided two-thirds interest in 260 acres of land situated in Jackson parish. The sale was duly recorded in the parish records.

Plaintiffs attack the transaction as fraudulent or simulated and as being a donation in disguise. The vendor and the two vendees testified as to the verity of the sale.

The record shows that Eric Abercrombie was born January 12, 1897, and that L. L. Abercrombie was born August 12, 1898. Consequently, in the spring of 1916, Eric was something over nineteen years of age and his brother was approximately eighteen years of age. At that time the boys, who had been living with and working for their parents, began to talk about leaving home to accomplish something for their own account. When their parents discovered their state of mind, a compromise was effected, and each boy was assigned by their father eight acres of land to cultivate for himself. While cultivating their own cotton crops, the boys lived at home and assisted their father in working his land.

When the boys harvested their cotton they turned it over to their father to be sold. The cotton consisting of six bales was not sold until the middle of the year 1917, when it brought the extraordinary price of 41½ cents per pound. The cotton and the seed therefrom produced between twelve and thirteen hundred dollars, which, instead of turning over to his sons, J. H. Abercrombie placed in bank to his own credit. The boys, however, were not satisfied with this arrangement, and

began to complain, again indicating, apparently, that they were about to leave home to work for themselves. Their mother saw what was about to happen, and as she did not want her sons to leave home, she, her husband, and the two boys entered into another compromise, whereby instead of paying the boys the amount of money brought by their cotton, their father sold them a two-thirds interest in the 260-acre farm. After the sale was made, the vendees went into possession of the land as owners, had it assessed to themselves, paid taxes, cultivated and improved it.

The trial judge found the price was entirely adequate, and defendants' explanation of the transaction was reasonable; that the sale took place at a time unsuspicious; and that its verity had not been questioned by plaintiffs for a number of years. From all of which, he experienced no difficulty in sustaining the title. We find no error in this.

For the reasons assigned, the judgment appealed from is affirmed.